UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA AUITO, individually and as next
friend of KEIRA AUITO., a minor; and
RYAN AUITO, individually and as next friend
of KEIRA AUITO, a minor

      Plaintiffs,

                                    Hon.
                                    Case No.

-vs-

DR. GERALD EVANSKI, individually and in his
capacity as Principal; RONALD ROBERTS individually
and in his capacity as Superintendent,
SUSAN GREINER, individually and in her
capacity as Executive Director of Elementary Education;
EMILY KELLER, individually and in her capacity as
School Teacher; SUSAN ARENA,
individually and in her capacity as Lunch Monitor;
LORI BALA, individually and in her
capacity as Lunch Monitor,
GINA REISS, individually and in her capacity
as Health Aide,  JANE DOE, individually and in
her capacity as School Employee; JOHN DOE,
 individually and in his capacity as School Employee;
and CHIPPEWA VALLEY SCHOOL DISTRICT;
and ERIE ELEMENTARY SCHOOL;

      Defendants.

BROWN AND BROWN, PLC
By:  Matthew C. Brown (P40078)
By:  Matthew J. Brown (P73030)
Attorneys for Plaintiffs
2525 S. Telegraph Rd. Ste. 100
Bloomfield Hills, MI  48302
(248) 454-1120
Mattbrownatty@gmail.com
Matthew.Brown.J@gmail.com

**COMPLAINT AND JURY DEMAND**

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

Plaintiffs, MELISSA AUITO, individually and as next of friend of Keira Auito, a minor (hereinafter "K.A."), and RYAN AUITO, individually and as next of friend of K.A., a minor, by and through their Attorneys, BROWN AND BROWN, PLC, state:

## JURISDICTION AND PARTIES

1.  Plaintiff Melissa Auito (hereinafter referred to as "Mrs. Auito") is the mother of K.A., a minor female.

2.  Melissa Auito is a resident of Clinton Township, County of Macomb and State of Michigan.

3.  Plaintiff Ryan Auito (hereinafter referred to as "Mr. Auito") is the father of K.A..  Mr. Auito  is a resident of Clinton Township, County of Macomb and State of Michigan.

4.  Plaintiff K.A. (hereinafter referred to as "K.A."), is a minor whose interests are represented by her next of friend, Melissa Auito, and her next of friend, Ryan Auito.  K.A. is a resident of Clinton Township, County of Macomb and State of Michigan.

5.  Defendant Dr. Gerald Evanski (referred to as "Evanski") was at all material times the principal of Erie Elementary School and employed by the Chippewa Valley Public School District.

6.  To date, Evanski remains employed by the Chippewa Valley Public School District as a Principal.

7.  Defendant Ronald Roberts (referred to as "Roberts") was at all material times the Superintendent at Chippewa Valley Public School District and employed by the Chippewa Valley Public School District.

8.  Roberts remains employed by the Chippewa Valley Public School District as a Superintendent.

9.  Defendant Emily Keller (referred to as "Miss Keller") was at all material times a

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

school teacher at Erie Elementary School and employed by the Chippewa Valley Public School District as a school teacher.

10. Keller remains employed by the Chippewa Valley Public School District as a school teacher.

11. Defendant Susan Greiner (referred to as "Greiner") was at all material times the Executive Director of Elementary Education and employed by the Chippewa Valley Public School District.

12. Greiner remains employed by the Chippewa Valley Public School District.

13. Defendant Susan Arena was at all material times a lunch monitor at Erie Elementary School and employed by the Chippewa Valley Public School District as a lunch monitor.

14. Defendant Lori Bala was at all material times a lunch monitor at Erie Elementary School and employed by the Chippewa Valley Public School District as a lunch monitor.

15. Defendant Gina Reiss was at all material times a health aide at Erie Elementary School and employed by the Chippewa Valley Public School District as a lunch monitor.

16. Defendant Erie Elementary School is a Michigan public school operating in Macomb County, Michigan.

17. Defendant Chippewa Valley Public School District (hereinafter referred to as "CVPS") is a Michigan public school district operating in Macomb County, Michigan.

18. This matter involves a federal question under the Americans with Disabilities Act, 42 USC S 12101 et. seq., and therefore this Court has jurisdiction to hear this matter.

## **JURISDICTION**

19. Plaintiffs hereby reassert and incorporate by reference paragraphs 1-18 as if fully set forth herein.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

20. Jurisdiction is proper based on the Federal Question(s) involved, 28 U.S.C. S 1331.

21.  Supplemental jurisdiction over state law claims is proper based on 28 U.S.C. S 1367.

## FACTUAL ALLEGATIONS

22. Plaintiffs hereby reassert and incorporate by reference paragraphs 1-21 as if fully set forth herein.

23. K.A. began attending Erie Elementary School in the Chippewa Valley School District at the start of the 2011-2012 academic year.

24. K.A. has a severe allergy to peanuts and tree nuts (hereinafter referred to as "allergy").

25.  K.A.'s allergy is so severe that exposure to even minuscule amounts of these allergens can cause a life-threatening if not fatal reaction.

26.  K.A.'s allergy can be triggered not only by ingestion of an allergen but also exposure to even miniscule amounts of allergens.

27.  There is no cure for food allergies; the only way to prevent a harmful allergic reaction from occurring is by avoiding the allergen itself.

28. Because of the severe nature of K.A.'s allergy, avoidance of the allergens is exceptionally difficult to accomplish and requires constant vigilance of K.A. and the people around her.

29.  To help prevent attacks from occurring, Melissa Auito has repeatedly offered to work with Erie Elementary to help screen allowed snacks, lunch items, and fundraising items.

30.  Melissa Auito has repeatedly offered to work with the school during school events to ensure that they do not involve food ingredients that would trigger an allergic reaction to K.A.

31.  Erie Elementary has refused to allow Mrs. Auito to be at the school's lunches.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

32. Erie Elementary has refused to do what was suggested by Mr. and Mrs. Auito concerning the prevention of dangerous foods at school in order to ensure the safety of K.A.

33. When K.A. suffers an allergic attack, it results in several physical effects, including but not limited to shortness of breath, constriction of her airway, difficulty or inability to breathe, anxiousness, swelling of her face and/or eyes, possible temporary loss of consciousness and possible death if not immediately treated.

34. Prior to the first day of school, Mr. and Mrs. Auito placed the school on notice that their daughter had a severe allergy to tree nut and peanut products.

35. K.A. had several severe reactions including a near death experience on February 6, 2013 at Erie Elementary after School employees placed another child, eating a peanut butter and jelly sandwich next to K.A. at the peanut free table.

36. As a result, K.A.'s parents complained to the Principal.

37. Even though classrooms were designated as peanut free, children were bringing peanut products in from home and eating them at the same lunch table as K.A.

38. Erie Elementary did not provide peanut free tables at lunch even though the school promised it.

39. The designated table for K.A.'s lunch period is not peanut free or tree nut free during Erie Elementary's other lunch periods.

40. The designated table for K.A.'s lunch has also been used as the punishment table as well.

41. Those designated tables are not peanut free or tree nut free at any other school or after school events.

42. Moreover, even though the classrooms were labeled "peanut free", peanuts and tree

nuts were also allowed to be brought into the classroom in lunch boxes for lunches and snacks.

43.  Even when K.A. didn't have peanuts or tree nuts at her designated peanut and tree nut free lunch table, Erie Elementary staff members often failed to properly wipe down the table following other lunch sessions.

44.  This occurred both prior to and during K.A.'s lunch period which resulted in K.A. being exposed to peanut and tree nut products.

45.  K.A. had several allergic reactions which prompted Melissa and Ryan Auito to meet with the Principal.

46.  The Superintendent's presence was requested at this meeting by Mr. and Mrs. Auito, but he refused to attend.

**The Allergic Reactions**

47.  On November 27, 2012, K.A. had itchy eyes.

48.  K.A. went to the school nurse that day and complained of problems with her eyes.

49.  No one from the school called her parents.

50.   K.A. had problems for the remainder of the evening.

51.  The next morning she was continuing to show signs of an allergic reaction and was taken to Dr. Weidner, her pediatrician.

52.  K.A.'s condition continued to worsen and she was taken to the Hospital Emergency Room that evening, where she was treated for an allergic reaction.

53.  The Principal apologized for not calling her parents.

54.  K.A.'s classroom had signs on the doors that said "peanut and tree nut free," however children were still allowed to bring these products to school in their lunch boxes – which were placed in K.A.'s classroom next to her lunch box.

55.  On February 6, 2013 K.A. had a severe reaction to peanut butter due to exposure at the

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

lunch table from another child at school eating a peanut butter and jelly sandwich next to her at the designated "peanut free and tree nut free table."

56.  She complained to the nurse 10 minutes to 3:00 pm. that she wasn't feeling well.

57.  The nurse offered her ice and said "you will be leaving school soon" and "go back to your room."

58.  The school never called K.A.'s parents.

59.  She continued to have problems for a few days and eventually had to return to the hospital emergency room on February 9, 2013.

60.  This incident almost killed K.A.  K.A. then went on to see her pediatrician on February 13, 2013.

61.  Her IGE levels - which measure exposure to allergens - were 20 times the normal level.

62.  On February 27, 2013,  Mr. and Mrs. Auito were told that the other first grade classes would not be made peanut and tree nut free even though K.A. would be in those rooms.

63.  Dr. Evanski refused to make the other classrooms peanut and tree nut free, stating that for indoor recess K.A. could stay in her classroom while her peers did not.

64.  This occurred on K.A.'s first day back to school following her February 6, 2013 reaction.

65.  Also on February 27, 2013, children were continuously switching between classrooms in order to watch a movie in another classroom.

66.  After being in one of the other classrooms, K.A. developed a rash on her hand.

67.  Mrs. Auito went to the school and had to give her Benadryl.

68.  This was not a peanut/tree nut free room even though there was a sign on the door stating that it was.

69. This was K.A.'s first day back at Erie Elementary following her February 6, 2013 reaction.

70. Erie Elementary entered into a Food Allergy Action Plan (hereinafter referred to as "504 Plan") with Melissa and Ryan Auito regarding their daughter K.A.

71. As a result of the 504 plan, various peanut and tree nut related food items were supposed to have been prohibited from being brought to K.A's classes or consumed in her presence. Also included in this plan but not limited to:

a. Tables were supposed to be wiped down with Clorox wipes instead of rags which can be cross contaminated;

b. Teachers and staff were supposed to be trained regarding the use of an epipen for K.A.'s safety.

c. K.A. was supposed to be accompanied to the office at all times. There have been numerous incidents in which K.A. has gone to the office unaccompanied.

d. Classrooms were supposed to be tree nut/peanut free.

e. Fundraising events and social events were supposed to be free of nuts as well.

f. Also, only certain items were permitted to be around K.A. during lunch, brought for school birthdays, snacks, and fundraisers.

72. Erie Elementary displayed deliberate indifference to complying with the 504 plan and has disregarded the assistance offered by Melissa Auito.

73. On 3-20-13 coconut oil was used in the popcorn served at reading night – peanut and tree nut candy was being sold there.

74. Ms. Auito was promised prior to reading night that no nut products or peanut products would be made by the school or sold by the school at any of the school events.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

75. One example of the indifference shown by Erie Elementary occurred on 4-15-13: Mrs. Auito called Dr. Evanski regarding her concern about coconut oil - a form of tree nut - being used in the popcorn during Erie Elementary's reading night.

76. During this conversation, Dr. E. promised he would look for an alternative oil to use in its place, and promised that Erie Elementary would not serve any popcorn at school until an alternative oil was found.

77. Despite the above referenced conversations, coconut oil was used anyway on 4-17-13.

78. The children were touching everything around and inside the school; ultimately K.A. had another reaction, and woke up sick.

79. This blatant failure to screen tree nut products put K.A.'s life in danger once again despite the 504 plan.

80. When later asked why he did not stop the teachers from cooking the popcorn with coconut oil the principal stated to Mr. and Mrs. Auito, "I could have stopped them, but I didn't want to."

81. Mrs. Auito indicated to the principal that they needed to use butter instead for the safety of her daughter in previous emails.

82. He also promised that the machine would be cleaned and promised that coconut oil would not be there.

83. On 4-18-13 K.A. told a substitute teacher that her throat was hurting.

84. The substitute teacher told her to take a drink of water.

85. K.A. said she did and the substitute teacher told her to take another drink and would not let her go to the office.

86. The substitute was Mrs. Harrison.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

87.  4-18-13 K.A. had swelling on her right eye.

88.  This was one day after the popcorn and the same day she was given ice cream at school without Ms. Auito's permission and contrary to the 504 plan.

89.  The swelling occurred on 4-18-13 in the evening and into the morning of 4-19-13.

90.  She also had a sore throat in school on 4-18-13.

91.  Mrs. Auito had to give her Benadryl on 4/17/13 evening and an allergy pill on 4-18-13.

92.  On 4-22-13, Keira's eye appeared swollen when she woke up in the morning having attended Erie Elementary the day before.

93.  She had been fine all weekend.

94.  On 5-3-13, Mrs. Auito brought K.A. her glasses to school.

95.  K.A. came out of her class alone and met her mother in the school office.

96.  K.A. was not accompanied by anyone as her plan requires.

97. On 5-7-13, K.A. went to the office to call Mrs. Auito around 1:45-2:00 pm.

98.  K.A. was again not accompanied to the office.

99.  K.A. told her mother that when she asked her teacher for someone to go with her, her teacher told her, "You are a big first grader now, you can go by yourself " - and sent K.A. alone.

100. On 5-8-13, K.A. called Mrs. Auito between 8:30am – 9:00 am, and again at 12:50 pm complaining that her eye hurt and her throat hurt.

101.  No one went with her to the office.  She was by herself again.

102. On 5-9-13 K.A. called home at 10:25 am because her throat and eye were itchy.

103.  No one walked her down to the office and back to her class.

104.  On 5-13-13, a guest author came in and did not wash their hands.

105.  On 5/15/13, K.A. came home with a rash on her leg.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

106.  This was after she had to take her inhaler at school at 1:45 p.m.

107.  She also woke up that morning with her right eye starting to swell.

108..  On 5/16/13 – K.A. informed her mother that everyday, after she is finished eating her food, a lunch monitor takes the paper off her table, throws it out and wipes the table with a rag, not a Clorox wipe (as required by her 504 plan).

109.  She then has to sit back down at her table.

110.  K.A. said the lunch monitor takes the rag (she calls it a wipe even though it is not) out of a bucket of water and rings it out and then wipes her table.

111.  There were numerous times each day that K.A.'s 504 plan was not being followed.

112.  K.A. has been sent to the office unaccompanied numerous times as well.

113.  The only instances when she does have a peer or adult accompany her is after lunch.

114. On Friday May 17, 2013, K.A. was rushed to the hospital after falling at the playground and breaking her elbow.

115.  At this time all the adults were sitting at table talking in a circle and not watching the children playing at recess.

116.  None of the adults even noticed the injury.

117.  Two other students helped K.A. to the adults that were standing around.

118.  While at the hospital it was discovered K.A. was also having a severe allergic reaction and was given medication for this reaction.

119.  Since K.A.'s 504 plan was established, the principal and his staff have jeopardized K.A.'s health numerous times.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

120.  The principal has allowed coconut oil popcorn to be used at the school twice, sold candy containing peanuts and tree nuts at reading nights, and fed K.A. ice cream without Mr. or Mrs. Auito's permission.

121.  A substitute teacher for Miss Keller did not let K.A. go the office when she said her throat hurt, and everyday she walks to the office alone

122.  All of the above are violations of K.A.'s 504 plan.

123.  K.A. was unaccompanied recently when Mrs. Auito picked her up.

124.  Despite the fact that the principal has made numerous promises to Mr. and Mrs. Auito, Erie Elementary has not kept its promises and has refused to abide by the 504 plan.

125. The actions outlined above are only a small sample of the treatment K.A. has suffered at the hands of Erie Elementary due to her allergy

126. As a direct and proximate result of the Defendants' wrongful acts, Plaintiff has suffered severe emotional and mental distress, anguish and economic loss.

127.  As a direct and proximate result of the Defendants' failure to comply with the 504 plan they agreed to enter into regarding K.A., or to stop the negligence of Erie employees, K.A. suffered severe embarrassment, humiliation, as well as mental and emotional distress and anguish. K.A. has also experienced severe pain and suffering.

128.  As a direct and proximate result of Defendants' failure to comply with the 504 plan designed for K.A., the emotional distress she suffers has physically manifested itself in symptoms including, but not limited to:

   a.  sleeplessness;
   b.  Increased anxiety
   c.  Headache

d.  Crying spells
e.  Nausea
f.  Fear to go to school
g.  Fear to be left away from her parents
h.  Nightmares
i.  Loss of appetite
j.  Panic attacks and stress
k.  Such other injuries and physical manifestations (Likely to occur in the future.)

129.  In addition K.A. may need additional tutoring as a result of the allergic reactions she has suffered at school.

130.  K.A. has been traumatized and calls home 2-5 times a day.

131.  She has gone through severe discomfort and is not the same person anymore.

132.  She has no confidence in the school and its employees to keep her safe.

133.  She will need psychiatric counseling for a very long time and possibly for the rest of her life as a result of this.

134.  On February 12, 2013, one week after K.A.'s reaction on February 6, K.A.'s blood was drawn, showing IGE levels reaching 2332 - which is twenty times higher than the normal amount.

135.  K.A. was fortunate that she did not suffer a fatal reaction.

136.  There is a note on the lunch menu that states that food may contain allergens and yet Erie serves peanut butter and jelly as an option.

137.  This school's inability or refusal to abide by the 504 plan has placed K.A.'s life in danger and caused her serious damage.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. S 12132 et. seq.

138.  Plaintiffs hereby reassert and incorporate by reference paragraphs 1-137 as if fully set forth herein.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

139.  Under the Americans with Disabilities Act (hereinafter referred to as "ADA"), 42 U.S.C. S 12132 et. seq., no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

140.  Title II of the ADA applies to state and local governments, including Public Schools.

141. CVPS and its officers, as a public school, are public entities that fall under the ADA.

142. Under the ADA, a "Qualified individual" is an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

143. Title II of the ADA applies to all "qualified individual(s) with a disability."

144.  Under the ADA, K.A. is a qualified individual with a disability because her allergy substantially limits her ability to breathe and eat, among other things, which are major and essential life activities and functions.

145.  Among other effects, K.A.'s allergy further substantially limits her ability to attend school, attend school social activities, and participate in other, major and essential life activities and functions.

146.  As such, the ADA requires a "reasonable modification" to be made, which does not fundamentally alter the nature of the services.

147.  Defendants adopted a 504 Plan to reasonably accommodate Plaintiff as a means of making a reasonable modification.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

148.  Instead of complying with the 504 Plan, CVPS ignored, disregarded and subverted the 504 Plan, including but not limited to:

a.  Failing to use Clorox bleach wipes on the tables,

b.  letting K.A. walk to the office un-accompanied,

c.  failing to ensure that classrooms were tree nut and peanut free, and

d.  failing to ensure that fundraising and social events were free of peanuts and tree nuts.

e.  Not training the staff at Erie Elementary to properly use an Epipen until after a February 25, 2013 meeting between Mr. and Mrs. Auito and Dr. Evanksi.  At that meeting, Dr. Evanski informed the Auito's that not only was Miss Keller, a new teacher, not trained in the use of an Epipen, but the entire Erie Elementary staff was untrained as of that date.  This occurred six months after the start of the school year.

f.  Allowing children who do not have peanut allergies to eat at the "peanut and tree nut free table",

g.  switching children's tables around and mixing them up,

h.  allowing use of designated peanut free tables for non-peanut free after-school events,

i.  allowing peanuts into K.A.'s classroom, and mixing up lunch boxes containing peanut products with those that are peanut free all constitute violations of K.A.'s 504 plan.

j.  Erie Elementary did not even establish a 504 plan for K.A. during the first 6 months of the 2012-2013 school year; once instituted, the 504 plan was violated daily.

149.  By not complying with the 504 Plan, Defendants have violated the ADA and have discriminated against Plaintiff.

150. By failing to comply with the ADA, and taking the actions set forth in the common

allegations, Defendants have denied K.A. her right to a free, public education by violating the 504 Plan and discriminating against her due to her disability.

151. Defendants have caused, and continue to cause, Plaintiff irreparable harm and damages as set forth herein.

152. Plaintiffs are entitled to compensatory and other damages.

153. Plaintiffs did not exhaust their claims under the Individuals with Disabilities Education Act (hereinafter referred to as "IDEA") before filing a claim for an ADA violation because it would be futile to use the due process procedure and it is improbable that adequate relief can be obtained by pursuing administrative remedies. As such, Plaintiff falls within the exception to the exhaustion requirement, because on the repeated failure to follow the 504 plan has placed K.A.'s life and health in jeopardy and for their efforts to attempt to correct the problem through the administrative process could very likely result in irreparable harm.

154. This matter otherwise comes within one or more exceptions of IDEA's requirement that administrative remedies must be exhausted prior to filing suit, listed as follows:

a. It would be futile to use due process procedures;

b. An agency has adopted a policy or pursued a practice that is contrary to the law;

c. It is improbable that adequate relief can be obtained by pursuing administrative remedies.

*Hope v. Cortines*, 872 F. Supp 14, 22 (E.D.N.Y. 1995),

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and grant Plaintiff legal relief, including but not limited to emotional damages, psychological damages, mental anguish damages, pain and suffering, and all other compensatory

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

damages, as well as exemplary damages, punitive damages interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT II

## VIOLATION OF THE REHABILITATION ACT OF 1973

### 29 U.S.C. S. 794 et. seq.

155. Plaintiffs hereby reassert and incorporate paragraphs 1-154 as if fully set forth herein.

156. Section 504 of the Rehabilitation Act of 1973 (hereinafter referred to as "Section 504"), protects individuals with disabilities from discrimination in any agency, school, or institution receiving federal financial assistance from the Department of Education.

157. Under the relevant federal law and regulations, Section 504 applies to preschool, elementary, secondary, and adult education programs or activities that receive Federal financial assistance and to recipients that operate, or that receive Federal financial assistance for the operation of, such programs or activities.

158. The 504 Act applies to Erie Elementary because it is a public school that receives federal financial assistance from the Department of Education.

159. Section 504 protects all persons with a disability from discrimination in educational settings based solely on their disability.

160. Section 504 and the implementing regulations define a person with a disability as any person who:

    a.   has a physical or mental impairment which substantially limits one or more major life activities;

    b.   has a record of such an impairment; or

    c.   is regarded as having such an impairment.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

161. Under Section 504, "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

162. Plaintiff K.A. is a qualified individual with a disability under Section 504 because her allergy substantially limits her ability to breathe and eat, among other things, which are major and essential life activities and functions.

163. Eating and breathing are major and essential life activities. As such, Plaintiff K.A. is a person with a disability that is protected by section 504.

164. In addition, K.A.'s allergy further substantially limits her ability to attend school, attend school social activities, and participate in other, major and essential life activities and functions.

165. Under Section 504 and the implementing regulations, K.A. is entitled to an appropriate education. Under Section 504, the provision of an appropriate education is the provision of regular or special education and related aids and services that

a. Are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met; and

b. Are based upon adherence to procedures that satisfy the requirements of SS 104.34, 104.35, and 104.36.

166. Pursuant to Section 504, CVPS is required to eliminate barriers that would prevent disabled students from participating fully in the services offered in the general curriculum. As such, reasonable accommodations must be made to allow the student to participate in the general curriculum.

167. Section 504 does not require a written Individualized Education Plan (hereinafter referred as "IEP), only a documented plan is required.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

168.  The School district had no 504 Plan in place regarding K.A. from the beginning of the school year until the February 6, 2013 incident.

169.  Mr. and Mrs. Auito approached Erie Elementary demanding that the school enter into a 504 plan and explained that Erie Elementary was required by law to implement such a plan for K.A.

170. Plaintiffs' and Defendants' written and documented 504 plan was adopted to eliminate barriers that would prevent K.A. from further allergic reactions and from being discriminated against in order to allow her to receive an appropriate education.

171.  Under Section 504, no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance.

172.  Defendants have failed to comply with the 504 Plan as set forth above.

173.  As such, Defendants have discriminated against K.A. and violated Section 504.

174.  Defendants have caused, and continue to cause, Plaintiffs irreparable harm and damages as set forth.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and grant Plaintiff legal relief, including but not limited to emotional damages, psychological damages, mental anguish damages, pain and suffering, and all other compensatory damages, as well as exemplary damages, punitive damages interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

### COUNT III
### VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### M.C.L 37.1402 et. seq.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

175. Plaintiffs hereby reassert and incorporate paragraphs 1-174 as if fully set forth herein.

176. K.A. has allergies that substantially limit her ability to breathe and eat, among other things, which are major and essential life activities and functions.

177. K.A.'s allergy further substantially limits her ability to attend school, attend school social activities and participate in other, major and essential life activities and functions.

178. Plaintiff K.A.'s allergies are a determinable physical or mental characteristic that substantially limits one or more of the major life activities (eating and breathing) of K.A.

179. K.A.'s allergies are unrelated to her individual ability to utilize and benefit from the services of Erie Elementary.

180. Under the terms of the Michigan Persons with Disabilities Civil Rights Act, Erie Elementary is an "educational institution," and subject to the Michigan Persons with Disabilities Civil Rights Act.

181. CVPS is an "educational facility" and " subject to the Michigan Persons with Disabilities Civil Rights Act.

182. Under the terms of the Michigan Persons with Disabilities Civil Rights Act, educational institution includes John Doe School Employee, Jane Doe School Employee, Principal, Superintendent, Executive Director of Education and School teacher, as agents of an educational institution.

183. K.A. is guaranteed protection under the Michigan Persons with Disabilities Civil Rights Act (hereinafter referred to as "Civil Rights Act").

184. Defendants and Plaintiffs both created, agreed to, and adopted the 504 Plan as a means to reasonably accommodate K.A.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

185. Because the 504 Plan was a cooperative agreement, it does not pose an undue hardship on Defendants.

186. Defendants have violated the Michigan Persons with Disabilities Civil Rights Act by denying K.A. the "full and equal enjoyment of the services, facilities, privileges, advantages and accommodations of a place of public accommodation or public service" by not abiding by and enforcing Plaintiffs 504 Plan.

187. Defendants further violated the Michigan Person with Disabilities Civil rights Act by failing to prevent discrimination at school.

188. By not enforcing the 504 plan, failing to halt the discrimination against K.A. and failing to take other actions more fully set forth in the common allegations, Defendants have discriminated against K.A. based on her disability.

189. This discrimination has violated K.A.'s rights and denied her access to a fair, free and proper education, to which all children in the state of Michigan are entitled.

190. As such, Plaintiffs are entitled to appropriate injunctive relief and damages.

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and grant Plaintiff legal relief, including but not limited to emotional damages, psychological damages, mental anguish damages, pain and suffering, and all other compensatory damages, as well as exemplary damages, punitive damages interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

## COUNT IV

## INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS

191. Plaintiffs hereby reassert and incorporate paragraphs 1-190 as if fully set forth herein.

192.  Intentional infliction of emotional distress is recognized as a separate theory of recovery.

193.  *Heckmann v Detroit Chief of Police,* 267 Mich App 480, 498; 705 NW2d 689 (2005). The elements of this tort include:(1)   extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. [*Lewis v LeGrow,* 258 Mich App 175, 196; 670 NW2d 675 (2003).]

194. Defendants' conduct in failing to comply with the 504 Plan, failing to prevent K.A. from being singled out, and failing to punish those employees who violated K.A.'s 504 plan, as outlined above, was intentional.

195.  Defendants' conduct in failing to comply with the 504 plan, failing to prevent K.A. from being singled out because of her disability, and failing to punish those employees who singled out K.A., as outlined above, constitutes conduct which is extreme, outrageous and of such character as not to be tolerated by a civilized society.

196.  Defendants conduct in failing to comply with the 504 plan, failing to prevent K.A, from being singled out, and failing to punish those employees who treated her differently, as outlined above, was for an ulterior motive or purpose.

197.  Defendants' conduct in failing to comply with the 504 plan, failing to prevent K.A.' from being singled out, and failing to punish those employees who singled out K.A., constitutes conduct that has resulted in serve and serious emotional distress to K.A., Melissa Auito and Ryan Auito.

198.  As a direct and proximate result of Defendants conduct, Plaintiffs have suffered damages as more fully set forth above.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and grant Plaintiff legal relief, including but not limited to emotional damages, psychological damages, mental anguish damages, pain and suffering, and all other compensatory damages in excess of $75,000.00, as well as exemplary damages, punitive damages, interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

### COUNT V
### INJUNCTION

199.  Plaintiffs hereby reassert and incorporate paragraphs 1-198 as if fully set forth herein.

200.  Defendants have repeatedly refused to abide and enforce the 504 plan that Plaintiffs and Defendants have entered into.

201.  As such, Plaintiff K.A.'s life has not only been placed in immediate danger, but continues to be substantially impaired.

202.  Plaintiff has suffered irreaparable harm for which she should receive injunctive relief in addition to recovery of damages caused by Defendants' breaches of the 504 plan.

203.  If Defendants are permitted to ignore the 504 plan, Plaintiffs will continue to be irreparably harmed.

WHEREFORE, Plaintiffs hereby respectfully request that this Honorable Court enter a judgment against defendant's granting the following relief on Count I-V of this Complaint:

        a.   Award Compensatory Damages for the economic damages incurred,

        b.   Award damages for emotional distress suffered;

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

c.   Grant injunctive relief

d.   Award costs interest and attorney fees

e.   Grant all other legal, equitable, and/or injunctive relief that the court

deems to be appropriate.

## COUNT VI

### GROSS NEGLIGENCE

204.  Plaintiffs hereby reassert and incorporate paragraphs 1-203 as if fully set forth herein.

205.  M.C.L. 691.1407(2) holds governmental employees acting within the scope of their

employment liable for conduct that amounts to gross negligence where such gross negligence is the

proximate cause of injury.

206.  Under relevant Michigan law, school principals and school employees are governmental

employees within the meaning of M.C.L. 691.1407(2); therefore M.C.L. 691.1407(2) applies to Defendants.

207.  M.C.L. 691.1407(7)(a) defines gross negligence as "conduct so reckless as to demonstrate a

substantial lack of concern of whether an injury results."

208.  Defendants knew that K.A. had a severe peanut allergy and therefore were aware of the

risks inherent in their conduct and that their acts and omissions were likely to result in grave injury to K.A.

209.  This reckless breach of Defendants' duty to exercise reasonable care over K.A. demonstrated a

substantial lack of concern for K.A.'s welfare and proximately caused K.A.'s multiple injuries, mental

anguish, pain, and suffering, which she will experience for the rest of her life.

210.  Defendants had a duty to exercise reasonable care over K.A. while she was attending Erie.

211.  Failing to implement a proper 504 plan for K.A. during the first 6 months of school and

subsequently ignoring the requirements of K.A.'s 504 plan once it was established constitutes a breach of

defendants' duty to exercise reasonable care over K.A.

212.  Specifically, failing to insure that lunch tables, classrooms, and after school events were

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

peanut and tree nut free, continuing to use coconut oil in popcorn despite knowledge that K.A. would be harmed, as well as failing to ensure that K.A. was accompanied by an adult or peer when traveling back and forth from the school office as required by K.A.'s 504 plan all comprise breaches of Defendants' duty to exercise reasonable care over K.A.

213.  Despite the fact the school was put on notice of K.A. severe peanut allergy, children were still allowed to eat at K.A.'s  lunch table with peanut butter and jelly sandwiches.

214.  The school staff knew of the allergy and refused to keep a table designated as peanut and tree nut free.

215.  Despite this knowledge K.A. was exposed and had a severe allergic reaction that day.  The school and its staff willfully violated this plan on a daily basis including the following but not limited to:

a.  Not properly wiping down tables

b.  Allowing peanut and tree nut products to be brought into peanut and tree nut free classrooms

c.  Allowing peanut and tree nut products to be consumed at the peanut and tree nut free lunch table

d.  Failing to insure that the peanut and tree nut free table stay peanut and tree nut free at lunch and during all other school and after school events.

e.  Not placing the proper paper at lunch on the table.

f.  Allowing K.A.'s lunch to be next to other peanut lunch boxes.

g.  Knowingly serving peanut and/or tree nut products at school functions and after school events.

h.  Discriminating against K.A. by serving her class a separate treat on Fun Day than the rest of the school.

i.  Allowing K.A. to walk unaccompanied – without an adult or peer – to the office.

j.  Ignoring K.A.'s request to go to the office when she was complaining of physical ailments that could possibly be related to her allergy.

k.  Ignoring K.A.'s request to call home when complaining of physical ailments that could be related to her allergy.

l.  Segregating K.A. from the rest of her class because of her disability.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

216. As a direct and proximate result of Defendants' actions, Plaintiff sustained serious physical and psychological injuries and damages, including, but not limited to:

    a. Permanent Psychological Harm

    b. Loss of Enjoyment of Quality of life

    c. Post traumatic stress disorder

    d. Medical bills

    e. Pain, suffering, and embarrassment

    f. Economic Damages

    g. Severe anxiety

WHEREFORE, PLAINTIFFS REQUEST that this Honorable Court enter judgment against Defendants, and grant Plaintiff legal relief, including but not limited to emotional damages, psychological damages, mental anguish damages, pain and suffering, and all other compensatory damages, as well as exemplary damages, punitive damages interest, costs, attorney fees so wrongfully sustained, and all other legal and equitable relief as this Honorable Court may award.

Dated: July 12, 2013

/S/ Matthew C. Brown
BROWN AND BROWN, PLC
By: Matthew C. Brown (P40078)
By: Matthew J. Brown (P73030)
Attorneys for Plaintiffs
2525 S. Telegraph Rd. Ste. 100
Bloomfield Hills, MI 48302
(248) 454-1120

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120 Fax (248) 282-0642

## DEMAND FOR JURY TRIAL

Plaintiffs, MELISSA AUITO, Individually and as Next of friend of K.A. a Minor (herein "K.A."), and RYAN AUITO, by and through their Attorneys, BROWN AND BROWN, PLC, and Hereby demand a trial by jury on any and all of the above claims triable.

Dated:  July 12, 2013

/S/ Matthew C. Brown
BROWN AND BROWN, PLC
By:  Matthew C. Brown (P40078)
By:  Matthew J. Brown (P73030)
Attorneys for Plaintiffs
2525 S. Telegraph Rd. Ste. 100
Bloomfield Hills, MI  48302
(248) 454-1120

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642

**VERIFICATION**

I have read and reviewed the above complaint and state that the facts stated are true and accurate to the best of my knowledge and recollection.

Date:  July 12, 2013

MELISSA AUITO

Date:  July 12, 2013

RYAN AUITO

Subscribed and sworn to before me
on _July 12 2013_.

_____

Notary Public, _OAKLAND_ County
Acting in_____ _OAKLAND_ County
My commission expires _5-15-2019_.

BROWN & BROWN PLC, ATTORNEYS AND COUNSELORS AT LAW
2525 S. Telegraph Road, Suite 100, Bloomfield Hills, MI 48302
(248) 454-1120  Fax (248) 282-0642